340 So.2d 718 (1976)
Mack BROWN
v.
STATE of Mississippi.
No. 49267.
Supreme Court of Mississippi.
November 30, 1976.
*719 John W. Land, Rosedale, for appellant.
A.F. Summer, Atty. Gen., by John C. Underwood, Jr., Special Asst. Atty. Gen., Jackson, for appellee.
Before PATTERSON, and SMITH and LEE, JJ.
LEE, Justice, for the Court.
Mack Brown and Granville Wright were jointly indicted, tried and convicted in the Circuit Court of Bolivar County on the charge of armed robbery. Brown was sentenced to serve a term of twenty-two (22) years in the state penitentiary, and he appeals from that judgment. We reverse and remand for a new trial.
Appellant assigns the following errors in the trial below:
(1) The trial court erred in refusing to grant appellant's motion for severance.
(2) The trial court erred in overruling appellant's objection to the introduction of letters allegedly written by Granville Wright.
(3) The trial court erred in overruling appellant's objection to testimony and evidence resulting from an illegal search.
(4) The trial court erred in overruling objections to statements made by the prosecuting attorney and in failing to declare a mistrial.
Two black males robbed the Merigold Branch of the Cleveland State Bank on January 7, 1975. Harry Speakes, manager, was in the bank at the time and was the only eyewitness. Brown and Wright were arrested the following day and were placed in the Cleveland jail. The prisoners were separated while in jail, and Wright attempted to send two letters to Brown by a trusty. The letters incriminated both Brown and Wright, and the trusty delivered them to the officers rather than to the prisoner.
Speakes positively identified Brown and Wright as the robbers. Fingerprints of Wright were found in the bank, and the pistol identified as being the weapon used in the robbery was loaned to Brown and Wright by Willie B. Davis. Speakes described a long coat worn by Brown, and such a coat was obtained from the home of Brown's mother where he was staying.

I
Did the trial court err in refusing to grant appellant's motion for severance?
On May 23, an order was entered for a special venire, and the case was set for trial on June 9. Appellant presented a motion for severance to the court on the day of the trial setting out that Brown's attorney was advised certain incriminating letters allegedly written from Wright to Brown would be offered in evidence by the prosecution. On the hearing, the trial judge denied the motion for the reason that it was not timely filed and that there were insufficient grounds for severance.
We are unable to say that the trial judge abused his discretion at that point in overruling the motion for severance. Ivory v. State, 336 So.2d 732 (Miss. 1976); Dueitt v. State, 225 Miss. 254, 83 So.2d 91 (1955); Bolin v. State, 209 Miss. 866, 48 So.2d 581 (1950).
The question of severance will not rise again on a new trial, since Wright did not appeal his conviction. However, trial judges must anticipate the danger of error in joint trials where evidence may be introduced which is admissible against one defendant and is prejudicial to another.

*720 II
Did the trial court err in overruling appellant's objection to the introduction of letters allegedly written by Granville Wright?
Incriminating letters written by Wright to Brown were intercepted by the officers and were introduced in evidence during the prosecution's case in chief. They were admissible against Wright, but were clearly hearsay as to appellant. Wright took the witness stand in his own behalf and denied that he and Brown had any connection with the robbery, although he did not deny writing the letters. Appellant was confronted with the witness and had the right to cross-examine him, but declined to do so. The jury was not instructed that the letters could be considered only against Wright and not against Brown.
In Bruton v. State, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), the Court had before it a confession implicating Bruton made by a codefendant who did not testify. The jury was instructed that the confession was admissible only against the codefendant and should not be considered as evidence against Bruton. The Court said:
"We have concluded, however, that Delli Paoli should be overruled. We hold that, because of the substantial risk that the jury, despite instructions to the contrary, looked to the incriminating extrajudicial statements in determining petitioner's guilt, admission of Evans' confession in this joint trial violated petitioner's right of cross-examination secured by the Confrontation Clause of the Sixth Amendment. We therefore overrule Delli Paoli and reverse." 391 U.S. at 126, 88 S.Ct. at 1622, 20 L.Ed.2d at 479.
The case was reversed because Bruton did not have the opportunity to cross-examine the codefendant and was denied his constitutional right of confrontation by the witness.
In Nelson v. O'Neil, 402 U.S. 622, 91 S.Ct. 1723, 29 L.Ed.2d 222 (1971), an incriminating statement made by the codefendant Runnels was admitted in evidence; Runnels later took the stand and denied he made the statement. The appellant declined to cross-examine Runnels and each time the confession was referred to, the trial judge instructed the jury that it could be considered only against codefendant Runnels and not the appellant. There, the appellant was confronted with the witness and had the opportunity to cross-examine him, and the jury also was instructed that the confession could not be considered against appellant. The Court stated:
"Runnels' out-of-court confession implicating the respondent was hearsay as to the latter, and therefore inadmissible against him under state evidence law. The trial judge so ruled, and instructed the jury that it must not consider any part of the statement in deciding whether or not the respondent was guilty. In Bruton, however, we held that, quite apart from the law of evidence, such a cautionary instruction to the jury is not an adequate protection for the defendant where the codefendant does not take the witness stand. We held that where the jury hears the codefendant's confession implicating the defendant, the codefendant becomes in substance, if not in form, a `witness' against the defendant. The defendant must constitutionally have an opportunity to `confront' such a witness. This the defendant cannot do if the codefendant refuses to take the stand.
* * * * * *
We conclude that where a codefendant takes the stand in his own defense, denies making an alleged out-of-court statement implicating the defendant, and proceeds to testify favorably to the defendant concerning the underlying facts, the defendant has been denied no rights protected by the Sixth and Fourteenth Amendments." 402 U.S. at 626, 629-30, 91 S.Ct. at 1725-26, 1727, 29 L.Ed.2d at 226, 228.
We held in Ivory v. State, supra, where the statement of a codefendant was not introduced until he took the stand in his own defense, after the prosecution had rested, and made statements under oath at variance with his prior written statement, it was admissible to impeach his testimony. *721 We further held, citing Newell v. State, 308 So.2d 71 (Miss. 1975), that the trial court cannot be put in error for failing to give an instruction unless requested in writing to do so.
While the question here will not present itself on retrial, in such cases, the prosecution should not offer, and the trial judge should not admit, in evidence, incriminating statements of a codefendant (implicating the defendant) during the State's case in chief, since it could not be known whether the codefendant would testify after the State rested. The statement, if admissible, should be admitted only after the codefendant took the stand and was subject to cross-examination by the defendant, and, when admitted, the trial judge should immediately, and at such other times as the statement might be referred to, tell (orally instruct) the jury that the statement must not be considered against the defendant. Likewise, if so requested by the defendant, the trial judge must instruct the jury in writing.

III
Did the trial court err in overruling appellant's objection to testimony and evidence resulting from an illegal search?
Officers went to the home of appellant's mother armed with a search warrant for the purpose of searching the premises. The mother voluntarily consented to the search and waived service of the search warrant upon her. Appellant's coat was found and was admitted in evidence. It is not disclosed how long appellant had been staying at his mother's home, whether he had any interest in a particular area of the home, or whether he was there only for a visit.
In United States v. Matlock, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974), the Court held a warrantless search was justified by the showing that permission to make the search was obtained from a third party who possessed common authority or other sufficient relationship over the premises or effects sought to be inspected. See also Haralson v. State, 318 So.2d 891 (Miss. 1975).
Under the facts developed in this case on the first trial, the search of the premises was authorized by appellant's mother and came within the rule set forth in United States v. Matlock, supra. The record does not reflect that the consent for the search was acquiescence to a claim of lawful authority but that it was freely and voluntarily given. Bumper v. North Carolina, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968). It follows that the objection was properly overruled.

IV
Did the trial court err in overruling objections to statements made by the prosecuting attorney in his argument and in failing to declare a mistrial?
During his argument, the county attorney told the jury:
"MR. WYNNE: Ladies and gentlemen, the State has put on enough evidence in this case; actually, when Mr. Speakes made an in-court identification of these two men coming in there and robbing that bank, we made the case. It's undisputed. You haven't heard anyone dispute this testimony of Mr. Speakes. Nobody disputed his testimony." (Emphasis added)
Mississippi Code Annotated section 13-1-9 (1972) reads as follows:
"The accused shall be a competent witness for himself in any prosecution for crime against him. The failure of the accused, in any case, to testify shall not however operate to his prejudice or be commented on by counsel."
The only persons present at the robbery of the bank were Mr. Speakes and the two robbers. The codefendant Wright took the stand and testified that neither he nor appellant were in the bank, and he denied that they robbed the bank. Thus, the testimony of Speakes was disputed by codefendant Wright. The statement of the prosecuting attorney emphasized the fact that the only other person who could have testified was appellant, and that he did not *722 dispute (failed to testify) the testimony of Mr. Speakes.
In Lambert v. State, 199 Miss. 790, 25 So.2d 477 (1946), the prosecuting attorney stated: "Where is the testimony that he did not do it? * * * There's no denial." [199 Miss. at 792, 25 So.2d at 477] The Court held that such statement constituted a comment upon the failure of the defendant to testify and was reversible error. A number of cases involving the point were discussed, and many of the statements which were held to be prejudicial error were similar to the one in the case at bar.
The prosecuting attorney said in Clark v. State, 260 So.2d 445 (Miss. 1972): "There are good reasons why we should not speculate, and you should base your decision on the law and the evidence, if they had any evidence; otherwise they could have presented it." [260 So.2d at 446] This statement was held to constitute prejudicial error for commenting upon the failure of the defendant to testify.
The prosecution must present its case against a defendant fairly and in accordance with the law and the rules of evidence. The statement in the instant case constituted a comment upon the failure of the appellant to testify and violated an elementary and long-established principle of law, and was prejudicial error.
For the reasons stated, the case is reversed and remanded for a new trial.
REVERSED AND REMANDED.
GILLESPIE, C.J., PATTERSON and INZER, P. JJ., and SMITH, ROBERTSON, SUGG, WALKER and BROOM, JJ., concur.