430 So.2d 418 (1983)
Raymond Ray WALKER
v.
STATE of Mississippi.
No. 54045.
Supreme Court of Mississippi.
April 20, 1983.
Danny L. Lowrey, Corinth, for appellant.
Bill Allain, Atty. Gen. by Amy D. Whitten, Sp. Asst. Atty. Gen., Jackson, for appellee.
*419 En Banc.
HAWKINS, Justice, for the Court:
Raymond Ray Walker appeals from his conviction of armed robbery in the Circuit Court of Alcorn County, and prison sentence of fifteen years.
The only question we address on this appeal is whether the circuit judge's refusal to grant a severance in the trial of Walker and his codefendant Mary Jane Wicks, because of an implicatory confession given by Wicks to law enforcement officers, was prejudicial error in view of trial developments. Persuaded it was, we reverse and remand for a new trial.

FACTS
On April 29, 1982, Mr. and Mrs. Haley Haney were the owners and operators of a small neighborhood grocery in Corinth called Haney's Corner Grocery. The store faced south, but also had a side door on the east side. They had been in business eighteen years. Between 5:00 and 5:30 that afternoon Alvie Charles Huey, Mary Jane Wicks, and Raymond Ray Walker came into the store simultaneously. The day was warm. Both doors were propped open. Huey was in his 30's, Walker in his 20's, and Wicks, a first cousin of Walker's, was 19. All were black.
Wicks asked for 45¢ worth of bologna. Huey went to the south door, moved some cartons of soft drinks which propped the door open, and closed the door. Mrs. Haney started towards the east door, and Walker moved some drinks which were keeping the east door open and closed the door. He then blocked Mrs. Haney from leaving through that door.
Huey approached Mrs. Haney and said, "All right, all right, give me those rings." She gave him her rings, but Huey only kept one ring, a one carat diamond ring worth $1,250.00.
At this moment Tommy Williams, a young black 21 years of age and a long-time customer of the store, drove up to the east door. When Williams arrived, Walker and Wicks bolted and ran from the store.
Huey began yelling, "Give me the money," shouting "I'll shoot you, I'll shoot you, I'll kill you." Mr. Haney heard his wife yell, "Give them the money, this is a holdup." He gave Huey approximately $200.00 cash.
Both Haneys observed what appeared to be a gun bulging beneath Huey's shirt. Although not noticed by either of the Haneys, Walker also had a knife stuck in his belt beneath his shirt.[1]
Williams, hearing Mrs. Haney exclaim they were being robbed and asking him to get the law, cranked the car and was driving off. The street light was red, however; traffic was coming on the green light and he had to stop. Huey in the meantime had run from the store; he jumped in Williams' car and directed him to drive across town. Williams complied, and after letting Huey out of the car, returned to the store.
Wicks and Walker were found by law enforcement officers hiding a few blocks from the store in some bushes. The arrest occurred only a few minutes after the robbery. Huey was never apprehended.
Wicks gave a verbal and written statement to the law enforcement officers.
The grand jury at the May, 1981 term indicted all three for the crime of armed robbery. Wicks and Walker were each appointed lawyers.
Walker's counsel learned on July 28, 1981, of the confession given by Wicks. On the morning of trial, July 29, 1981, he made a motion for a severance alleging as follows:
The Defendant, Mary Jane Wicks, is alleged to have made a statement to police officers which the State would attempt to introduce into evidence. If this statement is introduced into evidence in a joint trial of Raymond Ray Walker and Mary Jane Wicks, it would be highly prejudicial to the defendant, Raymond Ray Walker and the Court could not cure the prejudicial effect of the statement by instructing *420 the Jury not to consider the Statement as evidence against Raymond Ray Walker.
That Defendant's counsel was not aware of this statement or its contents until the night of July 28, 1981.
The trial court overruled the motion. The state recognized, and the court ruled, that the confession could not be used by the state in its case in chief.
Defense counsel also moved the court to limit testimony concerning the knife Walker carried, since the indictment made no mention of the knife. The district attorney informed the court that the state did not propose to use possession of the knife as part of its case in chief. The trial judge, in recognizing as a basic rule of law that the confession could not be used against Walker, was again informed by the district attorney that in the event the state sought to introduce a statement, he would ask the court to delete any remarks concerning Walker. The court thereupon denied the motion for a severance.
The state did not seek to introduce any statement or written confession of Wicks during the course of its trial in chief.
When the state rested, Wicks took the stand in her own defense. The substance of her testimony on direct examination was that she and Walker went to the store to engage in shoplifting. According to their plan, she was to divert the proprietor's attention and Walker was to pilfer merchandise. She testified Huey was not a part of the scheme and his appearance was a coincidence.
On cross-examination, and over the objection of Walker's attorney, the state was permitted to question Wicks about a verbal statement she gave law enforcement officers that she, Huey, and Walker had planned the robbery. Also, over the objection of Walker's counsel, the state cross-examined Wicks and introduced into evidence a written confession given by her. The part which implicated Walker is as follows:
He [Raymond Walker] told me him and Alvin Huey had been to Haney's Grocery two or three times and planned to rob the place.
In closing argument the district attorney told the jury they had the statement of Wicks that Walker came to her and told her he and Huey planned to rob the store, and that Walker wanted her to go with them and buy meat. The circuit judge overruled Walker's attorney's objection to this argument.

LAW
If there had been no motion for a severance and Wicks had testified, or if there had been a severance and Walker had called Wicks as a defense witness, we would have an entirely different question involving the cross-examination of Wicks concerning her pre-trial statement and confession implicating Walker in a robbery.
Here Walker's counsel anticipated the very problem which arose in the course of the trial. Of course, if Walker had been tried alone, and called Wicks as a defense witness, she would have been subject to being impeached by her pre-trial statements. Walker did not call Wicks as a witness for himself, however. She took the stand in her own behalf, and he was helpless as to the developments which took place during the trial.
The court's action in overruling the motion for a severance enabled the state to secure the admission of testimony otherwise inadmissible. The state thereby gained an impermissible advantage.
In Brown v. State, 340 So.2d 718 (Miss. 1976), we held that a trial judge had not abused his discretion in overruling a motion for a severance under circumstances quite similar to this case. We reversed and remanded on other grounds, however, and gave the following warning: "The question of severance will not rise again on a new trial, since Wright did not appeal his conviction. However, trial judges must anticipate the danger of error in joint trials where evidence may be introduced which is admissible *421 against one defendant and is prejudicial to another." Id. at 719.[2]
Our reflection convinces us that in a joint trial where an accused moves for a severance because the prosecution intends to introduce a pre-trial admission, statement, or confession given by a codefendant which implicates the accused, the trial judge should require the state to elect between a joint trial in which the statement is excluded, a joint trial in which the statement is admitted, but the portion implicating the accused is deleted, or agree to a severance. This election would also exclude the state from cross-examining a codefendant who takes the stand in his own defense about any pre-trial statement insofar as it implicated the accused.[3]
Therefore, we reverse and remand for a new trial not inconsistent with the foregoing.
REVERSED AND REMANDED.
BOWLING, DAN M. LEE, PRATHER and ROBERTSON, JJ., concur.
PATTERSON, C.J., WALKER and BROOM, P.JJ., and ROY NOBLE LEE, J., dissent.
ROY NOBLE LEE, Justice, dissenting:
In my opinion, the action of the lower court in overruling appellant's motion for a severance did not constitute reversible error, and I dissent from the majority opinion. The question presented to the court is two pronged and may be so discussed.

I.
The refusal to grant a severance was proper and supported by law.
Mississippi Code Annotated § 99-15-47 (1972) provides the following with reference to severance in felony cases:
§ 99-15-47. Joint indictments  severance in felonies.

Any of several persons jointly indicted for a felony may be tried separately on making application therefor before the order for a special venire in capital cases and before arraignment in other cases.
Rule 4.04, Uniform Criminal Rules of Circuit Court Practice (1979) follows:
SEVERANCE
The granting or refusing of severances of defendants in cases less than capital shall be in the discretion of the trial judge.
The court may, on motion of the state or defendant, grant a severance of offenses whenever:
(1) If before trial it is deemed appropriate to promote a fair determination of the defendant's guilt or innocence of each offense; or
(2) If during trial, upon the consent of the defendant, it is deemed necessary to achieve a fair determination of the defendant's guilt or innocence of each defense.
The facts relating to the motion for severance are undisputed. The appellant was indicted during the May 1981 Term of court and counsel was appointed May 11, 1981. The case was continued until the July 1981 Term and subsequently was set for trial July 29, 1981. Counsel for appellant filed a motion for special venire on July 15, 1981, which motion was granted. No motion for discovery was filed but an oral request was made of the district attorney a few days *422 before the trial date. On July 29, 1981, the date the case had been set for trial, court convened, and the special venire and regular jury panels were in the courtroom. All parties previously had announced ready for trial. At that time, counsel for appellant filed a motion for severance, stating the following as grounds therefor:
1.
The Defendant, Mary Jane Wicks, is alleged to have made a statement to police officers which the State would attempt to introduce into evidence. If this statement is introduced into evidence in a joint trial of Raymond Ray Walker and Mary Jane Wicks, it would be highly prejudicial to the defendant, Raymond Ray Walker and the Court could not cure the prejudicial effect of the statement by instructing the Jury not to consider the Statement as evidence against Raymond Ray Walker.
That Defendant's counsel was not aware of this statement or its contents until the night of July 28, 1981.
The law is well settled as to granting severances in felony cases. In Ivory v. State, 336 So.2d 732 (Miss. 1976), the defendant moved for a severance on the day before trial contending that "... statements were made by one or more of the co-defendants which would be damaging to the other co-defendants." [336 So.2d at 733]. This Court upheld the lower court's denial of the motion and stated:
In the case at bar, it was within the court's sound discretion whether a motion for severance should be granted and we cannot say that the court abused its discretion in overruling the motion for severance filed on October 27, 1975 (13 days after arraignment and 1 day before the case was set for trial). [336 So.2d at 734].
The Court further indicated that the statement of Ivory's codefendant Buckner was not introduced until he took the stand in his own defense, after the prosecution had rested, and made statements under oath at variance with his prior written statement. After quoting Nelson v. O'Neil, 402 U.S. 622, 91 S.Ct. 1723, 29 L.Ed.2d 222 (1971), the Court said: "[W]e think it was proper to allow the prosecution to introduce into evidence Buckner's prior inconsistent statement to impeach his testimony." [336 So.2d at 735]. (Damaging to defendant).
The decision of the lower court to grant or deny a motion for severance is discretionary and is reversible only where it constitutes an abuse of discretion. Ivory v. State, supra; Fairley v. State, 349 So.2d 1050 (Miss. 1977); Price v. State, 336 So.2d 1311 (Miss. 1976); Wall v. State, 51 Miss. 396 (1875).
Under the facts of this case, the lower court did not abuse its discretion in denying the severance and did not commit reversible error.

II.
The lower court correctly overruled the objection to the Wicks statement.
The lower court and the State recognized the principle that, where defendants were being tried jointly, the confession of one, incriminating the other, was not admissible on the State's case in chief. However, when the codefendant Wicks took the stand and testified favorably for appellant and to facts different from those stated in her confession, the lower court permitted the State to cross-examine her about the confession, which incriminated appellant, and admitted it in evidence. The procedure has been approved by courts of other jurisdictions, both federal and state, and by this Court. The lower court followed the decisions of this Court in dealing with that evidence.
The statement or confession of a codefendant is admissible for purposes of impeaching his/her testimony, since the right of confrontation with the witness is not violated. Here, appellant's counsel cross-examined the codefendant Wicks; she vehemently repudiated the previous statement (confession) made by her; and the substance of her testimony indicated an attempt to help and exonerate the appellant.
In Brown v. State, 340 So.2d 718 (Miss. 1976), Brown presented a motion for severance *423 on the day of the trial setting out that Brown's attorney was advised certain incriminating letters would be offered in evidence by the prosecution. The trial judge denied the motion for the reason that it was not timely filed and that there were insufficient grounds for severance. We held that the trial judge did not abuse his discretion in overruling the motion for severance. In discussing the admissibility of a confession made by a codefendant, which incriminates a defendant, we followed the principle stated in Nelson v. O'Neil, supra:
"We conclude that where a codefendant takes the stand in his own defense, denies making an alleged out-of-court statement implicating the defendant, and proceeds to testify favorably to the defendant concerning the underlying facts, the defendant has been denied no rights protected by the Sixth and Fourteenth Amendments." 402 U.S. at 626, 629-30, 91 S.Ct. at 1725-26, 1727, 29 L.Ed. at 226, 228. [340 So.2d at 720].
See also Dueitt v. State, 225 Miss. 254, 83 So.2d 91 (1955); Bolin v. State, 209 Miss. 866, 48 So.2d 581 (1950).
Therefore, I am convinced that the lower court committed no error in admitting in evidence the previous statement of codefendant Wicks.

III.

Facts of the Case
Uncontradicted evidence shows the following with reference to commission of the crime for which appellant was convicted:
(1) Appellant, Wicks and Huey, all joint defendants in the case, were well acquainted with each other; on the day of the robbery, they rode together in the car of a friend and got out of the vehicle on the corner near the Haney Grocery Store.
(2) Appellant and the other two defendants entered the Haney Grocery Store together.
(3) The Haneys became aware that a robbery was about to take place, and Mrs. Haney attempted to leave the store by the east door for help. Appellant blocked the door, prevented her from leaving and closed it.
(4) The robbery was committed with the three defendants being present in the store, Huey actually exhibiting a gun.
(5) A customer, Tommy Williams, drove up and started to enter the store, whereupon, appellant and Wicks fled through the east door and Huey commandeered the Williams automobile and forced Williams to drive him away from the scene.
(6) Appellant and Wicks were apprehended a few minutes later hiding in some tall grass near the Haney store.
(7) The Haneys positively identified appellant and Wicks; Tommy Williams positively identified them, having attended high school with Wicks.
The above evidence appears in the record without help from the Wicks confession. In my view, it overwhelmingly proves the guilt of appellant and Wicks beyond reasonable doubt.
The majority opinion does not cite a case to support its position. On the questions here, it overrules Ivory v. State, supra; Brown v. State, supra; and numerous other cases, without citing authority.
In my opinion, the majority view is clearly erroneous, and, therefore, I respectfully dissent therefrom.
PATTERSON, C.J., and WALKER and BROOM, P.JJ., join in this dissent.
NOTES
[1] Wicks testifying at trial said Walker had the knife.
[2] In Langston v. State, 373 So.2d 611 (Miss. 1979), this Court did not consider it reversible error because the circuit judge refused to grant a severance. In that case, however, it was not without significance to this Court that the defendant had failed to make a timely motion for a severance. Prior to Price v. State, 336 So.2d 1311 (Miss. 1976), the decisions of this Court indicated that an accused was entitled to a severance as a matter of right if requested prior to arraignment.
[3] See American Bar Association Project on Minimum Standards for Criminal Justice, Standards Relating to Joinder and Severance § 2.3 (Approved Draft 1968) (court should require election by prosecuting attorney of one of three above enumerated alternatives when codefendant's out-of-court statement is intended to be offered by the prosecutor as evidence, and said statement refers to, but is not admissible against, the defendant).